BETY JAVIDZAD (SBN 240598)
DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California  90017-5704
Telephone:  (213) 243-6115
Facsimile:   (213) 623-9924
bety.javidzad@dentons.com

TONY K. LU (*Pro Hac Vice* Pending*)*
DENTONS US LLP
One Beacon Street, Suite 25300
Boston, MA 02108-3107
Telephone:  (617) 235 6817
Facsimile:   (617) 235 6899
tony.lu@dentons.com

Attorneys for Plaintiffs
EQUATE MEDIA, INC., BUDGET VAN
LINES INC.; QUOTE RUNNER, LLC;
and HOME EXPERT, INC.

DENTONS US LLP
601 S. FIGUEROA STREET, SUITE 2500
LOS ANGELES, CA  90017-5704
(213) 623-9300

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EQUATE MEDIA, INC., a Nevada corporation; BUDGET VAN LINES, INC., a New York corporation; QUOTE RUNNER, LLC, a Wyoming limited liability company; and HOME EXPERT, INC., a Nevada corporation, <br><br> Plaintiffs, <br><br> vs. <br><br> DISHA VIRENDRABHAI SUTHAR; VARUNKUMAR SUTHAR; PRIME MARKETING, LLC., a Nevada limited liability company; and DOES 1 through 10, <br><br> Defendants. | No. <br><br> **JURY TRIAL DEMANDED** <br><br> COMPLAINT FOR: <br> (1) MISAPPROPRIATION OF TRADE SECRETS UNDER THE DEFEND TRADE SECRETS ACT; <br> (2) MISAPPROPRIATION OF TRADE SECRETS IN VIOLATION OF THE CALIFORNIA UNIFORM TRADE SECRETS ACT; <br> (3) BREACH OF CONTRACT; <br> (4) BREACH OF DUTY OF LOYALTY; (5) TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS <br> (6) TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE; (7) CIVIL CONSPIRACY; and <br> (8) VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW |

116275302

Plaintiffs Equate Media, Inc. ("EM"), Budget Van Lines, Inc. ("Budget"), Quote Runner, LLC ("QR") and Home Expert, Inc. ("Home Expert") (collectively "Plaintiffs" or the "Katz Companies") hereby file this Complaint for damages and permanent injunctive relief against Defendants Disha Virendrabhai Suthar ("Disha"), Varunkumar Suthar ("Varunkumar"), and Prime Marketing, LLC ("Prime Marketing") (collectively, "Defendants") for violations of the Defend Trade Secrets Act, 18 U.S.C. § 1836 et seq. ("DTSA"); the California Uniform Trade Secrets Act ("CUTSA"), Cal. Civ. Code § 3426 et seq., breach of contract, breach of duty of loyalty, tortious interference with prospective economic relations, tortious interference with contractual relations under California common law, civil conspiracy, and violation of California Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 et seq.) and allege as follows:

## THE PARTIES

1. Plaintiff, EQUATE MEDIA, INC. is a Nevada Corporation with a principal place of business in Las Vegas, Nevada.

2. Plaintiff, BUDGET VAN LINES, INC., is a New York Corporation with a principal place of business in Las Vegas, Nevada.

3. Plaintiff, QUOTE RUNNER, LLC, is a Wyoming Limited Liability Company.  The sole member of QUOTE RUNNER, LLC is Charlie Katz, who is a resident of Nevada.

4. Plaintiff HOME EXPERT, INC. is a Nevada Corporation with a principal place of business in Chicago, Illinois.

5. Defendant, DISHA VIRENDRABHAI SUTHAR is resides in Porter Ranch, California.

6. Defendant VARUNKUMAR SUTHAR resides in Porter Ranch, California.

//

//

DENTONS US LLP
601 S. FIGUEROA STREET, SUITE 2500
LOS ANGELES, CA 90017-5704
(213) 623-9300

7.      Defendant, PRIME MARKETING, LLC, is a Nevada Limited Liability Company.   Upon information and belief, the sole member/manager of PRIME MARKETING, LLC is Joshua Carpenter, who is a citizen of Arizona.

8.      Plaintiffs do not know the true names and capacities of defendants sued herein as Does 1 through 10, inclusive, therefore sues such defendants by such fictitious names.  Plaintiffs will amend this Complaint to allege their true names and capacities when ascertained.  Plaintiffs are informed and believe, and thereon allege, that each of the Doe defendants was at all relevant times, the agent, employee, or representative of the named Defendants and/or the other Doe and responsible for the acts alleged herein. Doe defendants were acting within the course and scope of such relationship, are responsible in some manner for the occurrences alleged in this Complaint, and Plaintiffs' injuries as alleged herein were proximately caused by their respective acts and omissions.

## PERSONAL JURISDICTION

9.      This Court has personal jurisdiction over Disha and Varunkumar because they are residents of California.

10.     This Court also has personal jurisdiction over Prime Marketing under California Civil Code of Procedure § 410.10 because it has transacted business within this State, committed tortious acts within this State, and otherwise engaged in conduct that allows for the exercise of jurisdiction as permitted by the Constitution of the United States and the California Constitution.

## SUBJECT MATTER JURISDICTION

11.     This Court has subject matter jurisdiction over the federal claim in this action, Defend Trade Secrets Act, pursuant to 28 U.S.C. § 1331 and over the pendent state law claims pursuant to 28 U.S.C. § 1367(a).

12.     This Court also has subject matter jurisdiction under the diversity statutes because this is an action between citizens of different states such that

DENTONS US LLP
601 S. FIGUEROA STREET, SUITE 2500
LOS ANGELES, CA 90017-5704
(213) 623-9300

diversity jurisdiction exists under 28 U.S.C. §1332(a)(1), and the amount in controversy exceeds $75,000 under 28 U.S.C. § 1332(b).

13. For purposes of diversity jurisdiction, a corporation is domiciled in the state of its incorporation and its principle place of business: EQUATE MEDIA, INC. is domiciled in Nevada; BUDGET VAN LINES, INC. is domiciled in New York and Nevada; and HOME EXPERT, INC. is domiciled in Nevada and Illinois.

14. For purpose of diversity jurisdiction, a limited liability company is domiciled in the state of all its members: The sole member of QUOTE RUNNER, LLC is Charlie Katz, who is a citizen of Nevada.

15. The sole member of PRIME MARKETING, LLC is Joshua Carpenter, who is a citizen of Arizona.

16. DISHA VIRENDRABHAI SUTHAR and VARUNKUMAR SUTHAR are citizens of California.

17. No defendants are citizens of Nevada, New York, or Illinois. Therefore, complete diversity of citizenship exists.

## VENUE

18. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) against Defendants because claims alleged herein arose in this District and a substantial part of the wrongful acts alleged herein occurred in this District, namely Disha and Varunkumar were employed in this District, signed employment agreements in this District, formed or conspired to form Prime Marketing in this District, and conspired with others to misappropriate Plaintiffs' trade secret and confidential/proprietary information in this District.

## ALLEGATIONS

19. This case involves the systematic theft and misuse of Plaintiffs' most valuable trade secrets and Confidential Information, including proprietary software systems, marketing techniques and data, and customer lists and pricing information developed by the Katz Companies over fifteen years.

DENTONS US LLP
601 S. FIGUEROA STREET, SUITE 2500
LOS ANGELES, CA 90017-5704
(213) 623-9300

20.     The assault against the Katz Companies came from within the company through an alliance of trusted, long-term employees, including Plaintiffs' former Information Technology Manager, Disha, her husband Varunkumar, and on information and belief, other former employees and individuals.

21.     Documents discovered by Plaintiffs reveal that as early as 2018 -- two years prior to their resignations -- Disha and Varunkumar starting planning and orchestrating a competing venture that would become Prime Marketing, LLC ("Prime Marketing") while they had complete access to all of the Katz Companies' proprietary information in order to execute their responsibilities assigned by the Katz Companies' founder and CEO, including, without limitation:

    a.  Access to Plaintiffs' 15 years of extensive internet-driven compilation of advertising and marketing data and statistics and strategies, including effective combinations of traffic sources, campaigns, ads, Adgroups, Keywords, bidding strategies, and insights to reports that provide Plaintiffs' unique edge over the competition;

    b.  Access to software codes and systems designs;

    c.  Access to high-level business and future growth strategies through direct and frequent interaction with Plaintiffs' founder and CEO;

    d.  Access to all client information, data, and statistics; and

    e.  Access to third-party customer relationship management company data involving over 30,000 sales leads using Plaintiffs' unique client identifier.

22.     Defendants cloned multiple aspects of Plaintiffs' business based on their Confidential Information and trade secrets to create Prime Marketing all while simultaneously receiving a paycheck from the Katz Companies for two years before Disha and Varunkumar resigned.  As a result of this blatant misappropriation, Prime Marketing currently uses the same proprietary techniques and strategies to sell the

DENTONS US LLP
601 S. FIGUEROA STREET, SUITE 2500
LOS ANGELES, CA 90017-5704
(213) 623-9300

same product offerings to the same top customers, and is earning profits approximating $250,000 per month at Plaintiffs' expense.

23.    Disha and Varunkumar also went to great lengths to cover their tracks before Plaintiffs were able to discover the wrongdoing, including installing data deletion software on their company-issued electronic devices.  As to one of the computers used by Varunkumar, Plaintiffs discovered that the hard drive was removed prior to his resignation.

24.    Accordingly, this suit is necessary to halt the continuing misappropriation and use of Plaintiffs' trade secrets and Confidential Information by a direct competitor and former employees, which have been embedded and incorporated into Prime Marketing's core business, to seek permanent injunctive relief to prevent the continued use of such information, to seek consequential and resulting damages as a result of Defendants' willful conduct, including double damages and attorneys' fees, and to seek justice for the inequities committed against Plaintiffs.

**GENERAL BACKGROUND**

25.    After more than 15 years of dedication and a highly imaginative, singular approach, CEO Charlie Katz ("Katz") founded and built Equate Media and a series of related companies, including Budget Van Lines, Quote Runner, and Home Expert (hereafter collectively the "Katz Companies").

26.    The Katz Companies are in a highly specialized niche internet marketing business in the moving and relocation services.

27.    The focus of the Katz Companies is primarily to match consumers who are planning to move out of state with moving companies that can service that particular route, date and size of move.

28.    Enabling consumers to compare multiple moving quotes at a single website and simultaneously providing moving companies the ability to "zero in" their

DENTONS US LLP
601 S. FIGUEROA STREET, SUITE 2500
LOS ANGELES, CA 90017-5704
(213) 623-9300

marketing dollars on potential jobs that fit within their truck routes, both saves the consumer money and helps moving companies to optimize their efforts.

29.    In the process, Mr. Katz developed unique marketing techniques, systems and procedures and invested in creating the necessary software to support them, in order to position the Katz Companies as one of the leaders in the industry.

30.    The Katz Companies have been rewarded with unprecedented growth and market share: They are currently matching over 1.8 million consumers with movers each year for the mutual benefit of both.

## HIRING OF DISHA VIRENDRABHAI SUTHAR

31.    In 2011, Mr. Katz hired Disha, a newly graduated software engineer from India, to develop software for EM.  Disha eventually assumed the role of Information Technology (IT) Manager overseeing EM's entire IT Department.

32.    Disha is originally from Ahmedabad, India and Mr. Katz greatly trusted her and wanted to help her, so he agreed to sponsor her and pay for the associated legal fees for her H-1B (Specialty Occupation) immigration visa and assisted her in obtaining a green card to remain in the country.

33.    Mr. Katz treated Disha like family and trusted her work and loyalty towards the Katz Companies.

34.    At Disha's urging, and as a good will gesture toward Disha, the Katz Companies also gave Varunkumar various tasks to perform around the office. However, he had no experience, was difficult to communicate with and could initially contribute very little.

35.    Varunkumar worked almost exclusively with Disha and his initial tasks included communicating with Plaintiffs' team in India.  He was eventually hired as a Project Manager.

36.    Before Disha and Varunkumar resigned from The Katz Companies, their combined salaries and benefits were approximately $250K.

DENTONS US LLP
601 S. FIGUEROA STREET, SUITE 2500
LOS ANGELES, CA 90017-5704
(213) 623-9300

37.     Because the Katz Companies conduct most of their business on the internet, the IT Manager holds one of the most sensitive positions at the company.

38.     As the IT Manager, Disha's responsibilities included helping implement Mr. Katz' instruction concerning the creation of proprietary software designed to give the Katz Companies a competitive advantage in the marketplace.

39.     Disha was also tasked with executing Mr. Katz's ideas and instructions involving landing pages, software tweaks, web programming, application development, and gathering other software related data.

40.     Disha participated in all strategy and marketing meetings and had access to most sensitive information, including plans for future growth and future product improvement and offerings.

41.     Because of the highly sensitive nature of the information being disclosed by the Katz Companies to Disha and Varunkumar and the vital work being done by Disha in carrying out Mr. Katz's instructions and vision for developing proprietary software vital to Plaintiffs' operations, each of them signed a "Confidentiality, Work For Hire and Nonsolicitation Agreement'' (the "Agreement"). A true and accurate copy of the Agreement for Disha is attached as Exhibit A. A true and accurate copy of the Agreement for Varunkumar is attached as Exhibit B.

42.     The Katz Companies require their key employees, such as Disha and Varunkumar, to sign such Agreements as a condition of employment.

43.     The Agreement, which is valid and enforceable under California law, states the following in relevant part:

> You hereby acknowledge that the Company has made, or
> may make, available to you certain [customer lists,
> pricing data, supply sources, techniques, computerized
> data, maps, methods, product design information, market
> information, technical information, benchmarks,
> performance standards and other confidential and/or

DENTONS US LLP
601 S. FIGUEROA STREET, SUITE 2500
LOS ANGELES, CA 90017-5704
(213) 623-9300

DENTONS US LLP
601 S. FIGUEROA STREET, SUITE 2500
LOS ANGELES, CA 90017-5704
(213) 623-9300

> proprietary information…including without limitation,
> trade secrets, inventions, patents and copyrighted
> materials (collectively, the "Confidential Information").
> (Paragraph 1).

44.     The Agreement(s) further state that Disha and Varunkumar both "agree to hold in confidence and not disclose to any third party, except to authorized persons in the course of your work for the Company, any and all Confidential Information." The Agreement also states that Disha and Varunkumar agreed to hold and use the Confidential Information "only in such manner as is authorized by the Company and not to make unauthorized copies of such articles…" (Paragraph 3).

45.     Under the Agreement(s), Disha and Varunkumar also agreed not to "disrupt or interfere with the business of the Company by directly or indirectly soliciting, recruiting, attempting to recruit, or raiding the employees of the Company or otherwise inducing the termination of employment of any employee of the Company" for one year after departure.  (Paragraph 9).

**PLAINTIFFS' CONFIDENTIAL AND TRADE SECRET INFORMATION**

46.     As a lead generation business that operates primarily online, Plaintiffs have developed proprietary systems to remain ahead of the competition while continuing to deliver consistent results for their customers.

47.     Plaintiffs have spent significant time, resources, energy, and trial and error towards research and development to develop these proprietary systems, which allow them to operate effectively and provide Plaintiffs with a competitive edge to remain market leaders.

*a.  Compilation of Advertising and Marketing Data, Strategies, and Keywords*

48.     As an internet marketing business in the niche moving and relocation services, Plaintiffs rely extensively on Google and other search engines to drive their business.

//

49.   Google collects and compiles detailed advertising and marketing data for their customers in their Google Ads accounts, which allow Plaintiffs to analyze and measure the efficacy of their advertising and marketing strategies based on the customer data and feedback.

50.   Plaintiffs' Google Ads account contains 15 years of highly specialized moving and relocation historical niche data that is unique to Plaintiffs, including their Campaigns, Themes, Adgroups, Search Terms, Devices, and Bid Strategies (collectively "Marketing Data") - all of which have been developed at a collective ad span cost of over $50 million.  For example, Plaintiffs' Marketing Data includes over 500 million search queries that have been collected over 15 years.

51.   The Marketing Data dictates Plaintiffs' business and marketing strategies because they help determine emerging trends

52.   The Marketing Data contained in Plaintiffs' Google Ads account is unique to their business, password-protected, available to a limited number of employees, and is neither published nor available to other competitors.

53.   Marketing Data also includes Plaintiffs' "Keywords" list.  A "Keyword" is the word or set of words that Google advertisers create for a given ad group to target ads to customers.  In addition, Keywords Themes represent multiple similar words and phrases that help match Plaintiffs' ads with Google searches.

54.   A lead generation business such as Plaintiffs would typically "bid" and pay for Keywords and Keywords Themes with search engines such as Google or Bing depending on the types of ads that Plaintiffs want to appear on top based upon the Keywords used by a potential customer.  As most consumers typically will not search past the first or second page of the internet search result, it is crucial to Plaintiffs' success that their websites come up as close to the top position on the first page of the search result as possible.

55.   The development of the Keywords and Keywords Themes are based on the extensive Marketing Data, which have allowed Plaintiffs to evaluate and optimize

DENTONS US LLP
601 S. FIGUEROA STREET, SUITE 2500
LOS ANGELES, CA  90017-5704
(213) 623-9300

the performance of specific Keywords in causing its websites to rise to top positions in response to internet searches of potential customers.  Armed with the Marketing Data and Keywords, Plaintiffs (and also a competitor) can determine how the Keywords and Themes perform compared to actual searches, the costs to bid, number of clicks, the cost per click, revenue, and profit.

56.     Plaintiffs have also created a proprietary list of thousands of individual words and whole phrases, that are most effective in marketing its moving related services, including Negative Keywords, which, for example, inform Google/Bing when not to show ads in a search engine.

57.     Marketing Data also contains data related to the "Conversion Rate" of customers.  In the field of internet marketing, the term "Conversion Rate" is the ratio of individuals who click on an ad and then go on to complete the form asking them for their contact information, so that it becomes a marketable sales lead. Most people who click on a specific ad generally do not follow through with providing their contact information. The higher the percentage of those that do, the higher the company's conversion rate.

58.     Knowledge of Plaintiffs' Conversion Rate would allow a competitor to measure the efficacy of Plaintiffs' marketing campaigns, including Keywords employed by Plaintiffs.  In other words, a competitor with knowledge of Plaintiffs' Conversion Rate would know the strength and weaknesses of particular Keywords, and then would be able to adjust their marketing campaigns to bid on certain Keywords to match Plaintiffs' efficacy.

59.     A competitor with access to Plaintiffs' Marketing Data,, Keywords and Themes, and Conversion Rates, would be able to avoid years of research and development, save substantial time, costs, and resources, and be able to allocate marketing and business development budgets to target specific customers and ad campaigns to compete directly and unfairly against Plaintiffs.

//

60.     As the IT Manager, Disha had access to Plaintiffs' entire Google Ads account, including the Marketing Data contained therein, which Plaintiffs have collected over a period of 15 years and the expenditure of more than 50 million dollars on advertising campaigns.

### b. *Proprietary Source Code*

61.     During Disha's employment and under her direction and control, the Katz Companies spent more than five million dollars developing proprietary software and other computer programs and software modules designed to grow the company and let it lead the market.

62.     The proprietary software and computer programs developed by the Katz Companies, which Disha oversaw, included source code that created multiple interrelated systems working together to allow the Katz Companies to run their online lead generation business.

63.     The Katz Companies created the Moving Matrix Module that collects data from multiple sites, and communicates directly with search engines such as Google, Facebook, and Bing on conversion data.  The Moving Matrix Module also includes a decision engine that allows Plaintiffs to optimize ways to monetize a lead, and provides up-to-date reports related to the relevant market and competitors. Further, it also contains Plaintiffs' proprietary information that is used in advertising campaigns, including Keywords and device information from Google, Bing, and Facebook.

64.     The Katz Companies also created the Movers Profile Management System, which allows Plaintiffs to automatically track, collect, and process information on thousands of clients including pricing, payment, geolocation, the type of lead, advertising budgets, expenditures, customer relationship management company routing information, as well as information pertaining to why a customer stopped buying leads.

//

DENTONS US LLP
601 S. FIGUEROA STREET, SUITE 2500
LOS ANGELES, CA 90017-5704
(213) 623-9300

65.    In order to capture all possible leads, including non-internet leads, the Katz Companies also created a Phone Module that directs miscellaneous leads to moving companies via a call concierge.   The concierge automatically connects customers to moving companies while providing the moving company with real-time data, which creates an efficient process while also collecting valuable customer data.

66.    Taken together, the proprietary software and programs that created the combination of the above modules allow the Katz Companies to create a seamless customer user experience while allowing the Katz Companies to maintain a lead in the industry.

67.    Disha, who was obligated to maintain strict confidentiality of her work, oversaw the day-to-day operations of Plaintiffs over many years, and was instrumental in the development and refinement of the proprietary source codes to give Plaintiffs a competitive edge.

c.    *Customer Lists and Information*

68.    Another valuable trade secret maintained by Plaintiffs to which Disha and Varunkumar had access, was data involving Plaintiffs' customers, including information related to their identities, their spending history, the types of products purchased, and the types of leads sought, customer budgets, pricing, and contact information.

69.    The confidential customer list and pricing information is a treasure trove of data that Plaintiffs have compiled over many years.

70.    Knowledge of Plaintiffs' customer list and related information would allow a direct competitor to develop targeted marketing outreach, undercut Plaintiffs prices, direct sales efforts to those customers who have shown a willingness to use Plaintiffs' services, and substantially increase the chances that a competitor could take away business from Plaintiffs.

//

//

DENTONS US LLP
601 S. FIGUEROA STREET, SUITE 2500
LOS ANGELES, CA 90017-5704
(213) 623-9300

DENTONS US LLP
601 S. FIGUEROA STREET, SUITE 2500
LOS ANGELES, CA 90017-5704
(213) 623-9300

**PLAINTIFFS SAFEGUARDS FOR TRADE SECRETS
AND CONFIDENTIAL INFORMATION**

71.     Each of the above-referenced trade secrets has independent economic value because of the time, resources, and energy expended to compiling the information.  The information is not shared to the public or to competitors.  Plaintiffs taken and continues to take appropriate steps to maintain the confidentiality of its trade secrets, including the following:

    a.  Key employees such as Disha and Varunkumar are informed of their confidentiality obligations, and are required to sign an acknowledgment, with their offer of employment;

    b.  Plaintiffs require all key employees to sign an Agreement similar to the ones that Disha and Varunkumar signed;

    c.  Employees with access to Confidential Information and customer data, can do so only through a password-protected system and accounts.

    d.  Plaintiffs maintain rules and guidelines in their Employee Handbook for the use and handling of confidential and proprietary company information, including the use of email and personal devices.  In particular, the Employee Handbook states that 'Employees must not disclose any confidential information to any unauthorized person inside or outside the company."

**DEFENDANTS' MISCONDUCT**

72.     Disha and Varunkumar resigned effective July 31, 2020.  Disha claimed that she received a better employment offer from a company that was not competitive to Plaintiffs, and also she wanted to spend more time with their young children.

73.     However, these statements were plainly false and intended to mislead as Plaintiffs came to learn that Disha and Varunkumar left to work fulltime on a competing venture, Prime Marketing, which they had started to develop or were

- 14 -

DENTONS US LLP
601 S. FIGUEROA STREET, SUITE 2500
LOS ANGELES, CA 90017-5704
(213) 623-9300

otherwise involved with, two years prior to their resignations while still employed by Plaintiffs.

74.     Unbeknownst to Plaintiffs, and after two years of clandestine operations in the moving space by Disha and Varunkumar, Prime Marketing eventually registered as a Nevada Limited Liability Company on or about September 23, 2019.

*a. Disha And The Outsourcing of IT Services to AIS*

75.     During her tenure, Disha demonstrated an inability to work with IT personnel as several direct hires quit shortly after starting their employment.  As a result, Plaintiffs began to increasingly rely on Disha to handle their IT needs, and which eventually led to Disha's promotion to IT Manager.

76.     Upon information and belief, Disha's inability or refusal to work well with others was a calculated plan to gain complete control and assert total influence over Plaintiffs' IT operations and to help ensure that her malfeasance would go undetected.

77.     As the IT Manager, Disha had unfettered control over all aspects of Plaintiffs' technology, including hardware, software, and website development and administration.

78.     One significant decision that Disha made was to outsource certain of the Katz Companies' IT development needs to a company called "AIS," and in the process, discharged Plaintiffs' existing software service provider.

79.     Disha claimed that her brother owned and operated AIS, but in actuality, AIS and its programmers acted at the sole direction and control of Disha.  In fact, Disha was directly responsible for approving pay increases, paid time off, and performance evaluations of AIS programmers.

80.     Over the course of several years, the Katz Companies paid AIS nearly one million dollars in development fees.

//

//

81.     Upon information and belief, Disha controlled all funds paid to AIS and unilaterally made determinations concerning how much AIS programmers were paid while keeping the excess funds for the benefit and enjoyment of her and her family.

b.  *Plaintiffs Discover the Existence of Prime Marketing And Use of Source Code.*

82.     In April of 2020 -- a few months prior to Disha and Varunkumar announced their resignation -- Mr. Katz discovered a website called "www.VanLinesMove.com," which was visually very similar to the Katz Companies' website and provided similar lead generation services directly competitive with the Katz Companies.  Figures 1, 2, and 3 below reflect the various similarities: On the left are screenshots of Plaintiffs' website, and on the right are screenshots of "www.VanLinesMove.com" :

Figure 1:



DENTONS US LLP
601 S. FIGUEROA STREET, SUITE 2500
LOS ANGELES, CA 90017-5704
(213) 623-9300

Figure 2:



Figure 3:



83.    In researching "www.VanlinesMove.com" further, and in particular information pertinent to the specific IP address, Mr. Katz discovered that Google had indexed the staging server from which www.vanlinesmove.com was based.  The IP Address belonged to Plaintiffs.

84.    The "www.VanLinesMove.com" website is also connected to two other similar websites:  "www.PriceMyMove.com" and "www.QuoteTheMove.com." Prime Marketing operates all these websites, which sell lead generation services in the moving industry directly competitive with the Katz Companies.

DENTONS US LLP
601 S. FIGUEROA STREET, SUITE 2500
LOS ANGELES, CA 90017-5704
(213) 623-9300

DENTONS US LLP
601 S. FIGUEROA STREET, SUITE 2500
LOS ANGELES, CA 90017-5704
(213) 623-9300

85.     When Mr. Katz wrote Disha and asked her about these websites and why the IP addresses were the same on March 9, 2020, Disha denied any involvement, but she informed him that she would investigate.

86.     The next day, Disha informed Mr. Katz that the IP addresses had been block, that she could not access them, and that it was not the same IP address as Plaintiffs. Mr. Katz then confirmed that the IP addresses for "www.VanlinesMove.com" and its sister companies had been blocked. Upon information and belief, Disha blocked access to the IP address and then misrepresented her involvement to Mr. Katz to avoid being discovered.

87.     Disha later falsely claimed that AIS and her brother had developed the competing websites without her knowledge.   She also falsely claimed that Leonard Aguilar, a general manager of Quote Runner at the time, asked her for a referral to AIS to do work for Joshua Carpenter on a real estate venture, and that her brother did not mean to take on an engagement for a competing company in the same industry.

88.     Indeed, Plaintiffs eventually learned that AIS actually stood for "Aarav Information Solutions."  "Aarav" is the name of Disha and Varunkumar's son, and that AIS is actually registered to the mothers of Disha and Varunkumar: Anjanaben Pankajkumar Suthar and Manjula Virendra Suthar.

89.     Plaintiffs also learned that AIS had been developing Prime Marketing under the direction of Disha while simultaneously charging Plaintiffs for services.

90.     Publicly available tax records reveal that AIS received 100% of its income from Plaintiffs, and that AIS billed Plaintiffs for services related to the launching of Prime Marketing.

91.     After Disha left the Katz Companies, Plaintiffs discovered an email sent by Disha to her husband on the same day that he had confronted her about the existence of these competing websites. The email contain no message except to inform Varunkumar of Mr. Katz discovery concerning AIS.

//

1

*c.* <u>*Further Evidence of Misappropriation of Plaintiffs' Marketing Data*</u>

2    92.    Plaintiffs continued their investigation as suspicion of Disha and

3    Varunkumar's involvement with Prime Marketing increased.

4    93.    The Google search engine plays a central role in the Katz Companies'

5    marketing efforts. One of the tools provided by Google to monitor competition is

6    called "Auction Insights," which identifies each competitors' "Overlap" percentage.

7    94.    The term "Overlap" is an internet marketing term of art that refers to the

8    percentage of times competing websites come up in response to the same internet

9    search.

10    95.    The primary factor governing the degree of "Overlap" between

11    competing websites is the similarity of Keywords, Ads, and overall targeting.

12    96.    In a recent analysis pulled from the Auction Insight feature on Google,

13    Plaintiffs' closest competitors in the moving marketing industry are identified as

14    www.VanLinesMove.com, www.QuotetheMove.com, and

15    www.Pricemymove.com.

16    97.    From the thousands of Plaintiffs' competitors, Auction Insights shows

17    http://www.VanLinesMove.com as the top competitor with an Overlap of 38.82

18    percent;  www.QuotetheMove.com as the #2 competitor with an Overlap of 29.44

19    percent; and www.Pricemymove.com as the #3 competitor with an Overlap of 23.05

20    percent.

21    98.    www.VanLinesMove.com,    www.QuotetheMove.com,    and

22    www.Pricemymove.com are less than a year old and directly linked to Prime

23    Marketing. These three websites have a tremendously high Overlap rate with the Katz

24    Companies of 91.31 percent, which demonstrate that Defendants effectively cloned

25    Plaintiffs' advertising and marketing themes and ads, including Keywords.

26    99.    By comparison, the Katz Companies have more than 7,000 competitors,

27    including a five billion dollar company called "Upack.com." Auction Insights shows

28

DENTONS US LLP
601 S. FIGUEROA STREET, SUITE 2500
LOS ANGELES, CA 90017-5704
(213) 623-9300

that Upack.com only has an Overlap of 14.37 percent, which is expected because both companies have been in the same business for many years.

100.   It is statistically impossible to achieve this degree of Overlap between Prime Marketing's websites and Plaintiffs' websites without direct access to Plaintiffs' trade secret related to the data contained in Plaintiffs' search query report, including information related to advertising and marketing data, Keywords, and Conversion Rate.

101.   Access to this information allowed Defendants to determine which marketing strategies were the most profitable, which then allowed them to direct resources accordingly to achieve results.

### d.   _Prime Marketing Targets Plaintiffs' Top Customers._

102.   The Katz Companies work with Granot, Inc., a customer relationship management company or "CRM" that specializes in data management and processing for the moving industry. In fact, most of the clients to whom the Katz Companies sell use the Granot system.

103.   Plaintiffs regularly transmits sales leads through Granot using a unique numeric client identifier -- an Access Key -- that allows them to access the Granot system and software.

104.   Through a conversation with a representative at Granot, Mr. Katz learned that Prime Marketing used Plaintiffs' unique Access Key to deliver tens of thousands of leads to their clients using Plaintiffs' Access Key.  Each of these sales leads were transmitted to Granot using the Katz Companies' Access Key and source code.

105.   Granot mistakenly believed that Prime Marketing was owned by the Katz Companies because Disha was using Plaintiffs' unique Access Key and she was sending test leads.

106.   The unauthorized use of the Access Key by Disha went undetected for many months before Disha and Varunkumar's resignations, which created confusion.

DENTONS US LLP
601 S. FIGUEROA STREET, SUITE 2500
LOS ANGELES, CA 90017-5704
(213) 623-9300

107.   The only way that the unique Access Key belonging to the Katz Companies could have ended up in the sales leads transmitted to Granot by Prime Marketing is if someone copied it and then used it to create a program for Prime Marketing not realizing that the client identifier -- which is unique like a fingerprint -- was left right in the middle of the electronic information.

108.   Even though Varunkumar made efforts to erase information from his company-issued computer, Plaintiffs' forensic specialist was able to discover that Varunkumar had administrator status on the Prime Marketing websites going back many months before he left Plaintiffs' employment.

109.   Another piece of information contained in the Prime Marketing sales leads delivered to Plaintiffs by Granot is the identity of the moving company client buying the sales lead. A review of the over 30,000 Prime Marketing sales leads show that the majority of the customers are the same companies to which the Katz Companies sell.

110.   Plaintiffs discovered that Prime Marketing has selective focused on Plaintiffs' twenty highest-paying customers.   The chances of Prime Marketing focusing on Plaintiffs' best customers is statistically impossible unless it had access to Plaintiffs' customer list and payment records.   In other words, not only did Prime Marketing copy nearly every aspect of Plaintiffs' proprietary information to generate leads, but they were also selling the same leads to the same top customers as Plaintiffs.

111.   Armed with the customer list, preferences, and historic payment records, Prime Marketing can then target these customers and narrowly-tailor its marketing approach to compete unfairly against Plaintiffs and to undercut their business.   Disha and Varunkumar had complete access to this information for two years while still employed by, and receiving paychecks from, the Katz Companies.

//

//

DENTONS US LLP
601 S. FIGUEROA STREET, SUITE 2500
LOS ANGELES, CA 90017-5704
(213) 623-9300

*e. <u>Disha and Varunkumar Permanently Deleted All Data From Their</u>*
*<u>Company-Issued Computers Before Departing the Katz Companies.</u>*

112.   Based on the mounting evidence of substantial impropriety, Plaintiffs hired a certified computer forensics specialist to analyze the computer devices owned by the Katz Companies and used by Disha and Varunkumar during their employment.

113.   The forensic specialist discovered that Disha irretrievably deleted all data from her company-issued computer by utilizing a soft program akin to Bleach Bit.  Disha went to extraordinary lengths to ensure that no information remained on her company computer.

114.   Unlike Disha's computer, however, Varunkumar deleted personal files and  attempted to reinstall the operating system on his company-issued laptop, which left trace amounts of recoverable data.

115.   For example, the forensic specialist discovered that Varunkumar had saved an "admin password" for the Prime Marketing Web Application on one of his company computers.  Such a password grants access to the Prime Marketing account far beyond a standard user and is evidence that Varunkumar was involved with setting up such websites.

116.   The "admin password" had been created in 2019 well before Varunkumar's departure from Plaintiffs, while he was still fully employed and while Disha was still sitting in daily morning meetings with upper management where high level business strategies and the Katz Companies' most confidential information were discussed and planned.

117.   Varunkumar's company-issued laptop also contained trace metadata that confirmed Varunkumar was analyzing search query reports on his computer while he was employed despite it not being remotely related to his job function at the Katz Companies.

//

//

DENTONS US LLP
601 S. FIGUEROA STREET, SUITE 2500
LOS ANGELES, CA  90017-5704
(213) 623-9300

118.  The deliberate or attempted deletion of computer files, including all metadata, is further evidence of Defendants' clandestine attempt to hide their wrongdoings.

119.  Significantly, at approximately 11:49 pm on July 30, 2020 - the day before Varunkumar and Disha resigned from the Katz Companies - Varunkumar downloaded the Katz Companies' entire customer database, including customer information related to contacts, pricing, and other customer preference information collected by the Katz Companies over 15 years.

120.  At the time of Disha's resignation, she had been overseeing a three-year project initiated by Mr. Katz.  The project goal was to integrate the multiple interrelated systems developed by the Katz Companies and to create a new system based on the Katz Companies' more than fifteen years of software program development and market knowledge.

121.  Disha never completed the project.  Upon information and belief, Disha deliberately impeded or otherwise slowed the progress on the development of the Katz Companies' system so that she could instead develop and launch Prime Marketing in direct competition with the Katz Companies based on the Katz Companies' trade secrets and Confidential Information.

122.  On December 30, 2020, Plaintiffs sent Disha, Varunkumar, and Prime Marketing cease and desist letters and demands for preservation of documents and other materials via FedEx and electronic mail.  (Exhibit C).  Prime Marketing did not respond at the designated deadline despite being represented by the same counsel as Disha and Varunkumar, and despite asking for an extension of time to respond.

123.  Disha and Varunkumar, through counsel, responded and denied any impropriety, but confirmed that (a) Disha and Varunkumar work for Prime Marketing; (b) utilizes Keywords in competition with Plaintiffs; (c) developed the source code and system that Prime Marketing uses; and (d) sells to customers in direct competition with Plaintiffs.

DENTONS US LLP
601 S. FIGUEROA STREET, SUITE 2500
LOS ANGELES, CA 90017-5704
(213) 623-9300

124.  Disha and Varunkumar further claimed that Varunkumar could not recall downloading the Katz Companies' extensive customer database mere hours before his going-away party notwithstanding Plaintiffs' possession of forensic data that establishes otherwise.

**CAUSES OF ACTION**

**First Claim for Relief**

**(Violation Of Defend Trade Secrets Act -- 18 U.S.C. § 1836, _et seq._)**

**(Against All Defendants)**

125.  Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs 1 through 124 of this Complaint.

126.  A "trade secret" under the DTSA includes "all forms and types of financial, business…compilations…methods, techniques, processes…or codes…" that is (1) subject to reasonable measures to keep the information secret; and (2) derives independent economic value, real or potential, from not being generally known or readily ascertainable by others who can obtain economic value from the disclosure or use of the information."  18 U.S.C. § 1839(3).

127.  As set forth more fully above, Plaintiffs' trade secrets include, without limitation (1) Plaintiffs' Marketing Data, including Keywords, Themes, and Conversion Rates that Plaintiffs have gathered over 15 years, (2) proprietary source code developed by Plaintiffs that created multiple systems working together that allowed Plaintiffs to run their online business, and (3) confidential customer and pricing information.

128.  The aforementioned trade secrets are subject to reasonable efforts to maintain their secrecy, including Plaintiffs' requirement that all key employees, such as Disha and Varunkumar, to sign Agreement(s) to maintain the confidentiality of such trade secrets, and computers and access to such information are password protected.

//

DENTONS US LLP
601 S. FIGUEROA STREET, SUITE 2500
LOS ANGELES, CA 90017-5704
(213) 623-9300

129.   The aforementioned trade secrets also derive independent economic value from not being generally known to the public and have been derived through years of compilation, trial and error, and significant investments, all of which provide Plaintiffs with a competitive edge.

130.   Disha and Varunkumar had access to all of Plaintiffs' Confidential Information and trade secrets by virtue of Disha's position as the IT Manager, and Varunkumar's position as a Project Manager who worked directly for, and in concert, with her.

131.   Notwithstanding the Agreement, which is valid and binding, Disha and Varunkumar misappropriated Plaintiffs' valuable trade secrets to allow them to accelerate the development, launch, and operation of Prime Marketing, which directly competes with Plaintiffs.  In fact, while it took Plaintiffs almost 15 years to become a leader in the market, it took Prime Marketing only a few months to nearly duplicate Plaintiffs' efforts.

132.   Plaintiffs further allege that Defendants have used, and continue to use, Plaintiffs' trade secret information to target Plaintiffs' most valuable customers.

133.   Defendants' actions therefore constitute a violation of the DTSA, 18 U.S.C. § 1836 *et seq.*

134.   The trade secrets at issue relate to the lead generation across the country and around the world on the internet, which implicate interstate and foreign commerce.

135.   As a direct, proximate result of Defendants' unlawful actions, Plaintiffs have suffered damages, including lost profits, lost royalties, lost goodwill, diminished profit margins and valuation, increased advertising costs, unjust enrichment based upon value of the information retained/loss, and other damages to be determined at trial.

136.   The losses and harm to Plaintiffs are ongoing and cannot be remedied by damages alone.

DENTONS US LLP
601 S. FIGUEROA STREET, SUITE 2500
LOS ANGELES, CA 90017-5704
(213) 623-9300

137.   Plaintiffs have no adequate remedy at law for sufficient compensation for the wrongs committed by Defendants.

138.   Defendants acted willfully, maliciously, and with reckless disregard to the rights of Plaintiffs, entitling Plaintiffs to recovery of double damages and recovery of their reasonable attorneys' fees.

139.   WHEREFORE, Plaintiffs demand judgment in its favor for Defendants' violation of the Defend Trade Secrets Act, and request actual damages to be proven at trial, and multiplied damages, and permanent injunctive relief, including, but not limited to, the immediate return of all of Plaintiffs' trade secrets, Confidential Information and intellectual property, an Order directing Defendants to refrain from using such Confidential Information and to cease using such information (and information derived from such information), and granting attorneys' fees, and such other and further relief available under the DTSA as this Court deems just.

## Second Claim for Relief

## (<u>Misappropriation Of Trade Secrets – Cal. Civ. Code § 3426 et seq.</u>)

## (<u>Against All Defendants</u>)

140.   Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs 1 through 139 of this Complaint.

141.   A trade secret under the CUTSA (Cal Civ. Code § 3426.1(d)) is defined as: "information, including a formula, pattern, compilation, program, device, method, technique, or process, that (1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."

142.   The information known to have been misappropriated by Defendants, including (1) Plaintiffs' Marketing Data, including Keywords, Themes, and Conversion Rates that Plaintiffs have gathered over 15 years; (2) Plaintiffs'

DENTONS US LLP
601 S. FIGUEROA STREET, SUITE 2500
LOS ANGELES, CA 90017-5704
(213) 623-9300

proprietary source code described above; and (3) Plaintiffs' customer list and pricing information as described above.

143.   The aforementioned trade secrets are not generally known to the public and subject to reasonable efforts to maintain their secrecy by Plaintiffs, including requiring key employees to sign Agreements similar to one signed by Disha and Varunkumar, and such Confidential Information is kept on password-protected platforms.

144.   The trade secrets at issue also derive independent economic value, which Plaintiffs have spent over 15 years developing and compiling.  A significant part of its value derives from the fact that it is not generally known by competitors in the industry who could obtain economic and unfair competitive value from its disclosure, including avoiding years of trial and error. All of this provides Plaintiffs with a competitive edge because the information allows Plaintiffs to generate consistent and the most relevant business leads for their customers in the moving industry.

145.   The trade secrets at issue are the product of extensive strategic processes, financial resources, and significant time spent devoted to development and refinement.

146.   Disha and Varunkumar knew or should have known that they were, and continue to be, under a contractual duty or obligation to maintain the secrecy of Plaintiffs' trade secrets.

147.   Notwithstanding knowledge of, and in direct violation of the terms of the Agreement(s), Disha and Varunkumar misappropriated, used, and disclosed Plaintiffs' trade secret information to launch Prime Marketing in direct competition with Plaintiffs while still in the employ of the Katz Companies.

148.   As a direct and proximate result of Defendants' unlawful actions, Plaintiffs have suffered damages, including lost profits, lost goodwill, diminished

profit margins and valuation, increased advertising costs, unjust enrichment based upon value of the property retained/loss, and other damages to be determined at trial.

149.   Defendants' continuing misappropriation of Plaintiffs' trade secrets has been willful and malicious in light of Defendants systematic raid of Plaintiffs' most valuable information, including extensive efforts to hide or otherwise obfuscate the misconduct.  Therefore, Plaintiffs are entitled to an award of exemplary damages and attorneys' fees pursuant to Cal. Civ. Code §§ 3426.3(c) and 3426.4.

150.   WHEREFORE, Plaintiffs demands judgment in its favor for Defendants' violation of CUTSA, and request actual damages to be proven at trial, multiplied damages, and permanent injunctive relief, including, but not limited to, the immediate return of all of Plaintiffs' trade secrets, Confidential Information and intellectual property, an Order directing Defendants to refrain from using such Confidential Information and to cease using such information (and information derived from such information), and granting attorneys' fees, and such other and further relief available under CUTSA as this Court deems just.

### Third Claim for Relief

### (Breach of Contract)

### (Against Disha and Varunkumar)

151.   Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs 1 through 150 of this Complaint.

152.   Disha and Varunkumar both entered into Agreements as part of their employment with Plaintiffs.

153.   The Agreements are valid and enforceable under California law, do not restrict their right to seek employment elsewhere, and are necessary to protect Plaintiffs' Confidential Information and trade secrets.

154.   Disha and Varunkumar received adequate and sufficient consideration for entering into the Agreements, including continuous employment and substantial salary and benefits commiserate with their experience.

155.  Plaintiffs have fulfilled all of their obligations under the Agreements.

156.  "Confidential Information" as defined by paragraph 1 of the Agreement includes "customer lists, pricing data, supply sources, techniques, computerized data, maps, methods, product design information, market information, technical information, benchmarks, performance standards…including without limitation, trade secrets, inventions, patents and copyrighted materials."

157.  The Agreement further provides in relevant part that Disha and Varunkumar, unless granted specific written permission, "agree to hold in confidence and not to disclose to any third party, except to authorized persons in the course of your work for the Company, any and all Confidential Information."   (Paragraph 3).

158.  During their employment, Disha and Varunkumar had access to substantial confidential/proprietary and trade secret information related to, *inter alia*, (1) Plaintiffs' Marketing Data, including Keywords, Themes, and Conversion Rates that Plaintiffs have gathered over 15 years; (2) Plaintiffs' proprietary source code; and (3) Plaintiffs' customer list and pricing information.

159.  In addition, Disha and Varunkumar, in their employment positions with the Katz Companies, had direct knowledge of Plaintiffs' top level business strategies, marketing plans, customer information and preferences, and had access to third party CRMs through the use of Plaintiffs' unique Access Key.

160.  Disha and Varunkumar were aware of the significance of Plaintiffs' Confidential Information based on their understanding of the terms, and execution of the Agreement(s), as well as the numerous steps they took to conceal their misconduct, including installing software to delete all metadata and other traces from their company-issued electronic devices.

161.  Disha and Varunkumar improperly retained, used, and disclosed Plaintiffs' Confidential Information and trade secrets to develop, launch, and run Prime Marketing in direct competition with Plaintiffs two years before their resignation on or about July 31, 2020 and after.

DENTONS US LLP
601 S. FIGUEROA STREET, SUITE 2500
LOS ANGELES, CA 90017-5704
(213) 623-9300

162.   Disha and Varunkumar also improperly used Plaintiffs' unique Access Key to access Plaintiffs' customer leads at Granot for the benefit of Prime Marketing.

163.   The Agreement(s) also included a non-solicitation clause, which provided that Disha and Varunkumar agreed not to direct or indirectly solicit, recruit, attempt to recruit, or raid employees of the Company within one year of leaving the company.

164.   Plaintiffs have become aware that a former employee, Eric Conces, left the Katz Companies in February 2020 to work for Prime Marketing.

165.   Eric Conces was an Account Executive at Quote Runner.

166.   Upon information and belief, and in direct breach of Paragraph 9 of the Agreement(s), Disha and/or Varunkumar solicited or recruited Mr. Conces to work at Prime Marketing because of his expertise and knowledge with specific customers.

167.   As a direct and proximate cause of Disha and Varunkumar's multiple breaches of the Agreements, Plaintiffs have suffered ascertainable damages, including lost profits, lost goodwill, diminished profit margins and valuation, increased advertising costs, unjust enrichment based upon value of the property retained/loss, and other damages to be determined at trial.

168.   WHEREFORE, Plaintiffs demand judgment in their favor for breach of the Agreement(s) and request actual damages to be proven at trial, and multiplied damages, and permanent injunctive relief, including, but not limited to, the immediate return of all of Plaintiffs' trade secrets and Confidential Information, an Order directing Defendants to refrain from using such Confidential Information and to cease using such information (and information derived from such information), and granting attorneys' fees, and such other and further relief as this Court deems just.

//

//

//

1

2

3

DENTONS US LLP
601 S. FIGUEROA STREET, SUITE 2500
LOS ANGELES, CA 90017-5704
(213) 623-9300

## Fourth Claim for Relief

## (<u>Breach of Duty of Loyalty</u>)

## (<u>Against Disha and Varunkumar</u>)

169.   Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs 1 through 168 of this Complaint.

170.   Disha and Varunkumar were both in positions of trust, responsibility, and management with Plaintiffs.

171.   As an internet-based company, the Katz Companies relied heavily on Disha, who held the position of IT Manager, and Varunkumar, who served as a Project Manager and Disha's "right hand."  As the IT Manager, Disha's was privy to extensive Confidential Information, trade secrets, customer information, and high level business strategies.

172.   Disha and Varunkumar also had managerial roles over other Plaintiffs' employees and agents, including "AIS."

173.   Based on these responsibilities and the level of trust that Plaintiffs placed upon Disha and Varunkumar, they owe the Katz Companies a duty of loyalty.

174.   Disha and Varunkumar breached their duties of loyalty to the Katz Companies by, *inter alia*, misappropriating Plaintiffs' Confidential Information and trade secrets during their employment for the benefit of Prime Marketing at least two years before their resignations, misrepresenting the true purpose and scope of work related to AIS, charging Plaintiffs for AIS's services and diverting such funds to develop Prime Marketing, deliberately slowing the developmental work of Plaintiffs in favor of developing and launching Prime Marketing, attempting to cover-up damaging evidence by irretrievably deleting data from Plaintiffs' electronic devices before they could be discovered, misrepresenting the scope of their involvement when confronted, and improperly using Plaintiffs' Access Key to obtain customer leads at Granot for the benefit of Prime Marketing.

//

DENTONS US LLP
601 S. FIGUEROA STREET, SUITE 2500
LOS ANGELES, CA 90017-5704
(213) 623-9300

175.   As a direct and proximate cause of Disha and Varunkumar's breach of duty of loyalty, Plaintiffs have suffered ascertainable damages, including lost profits, lost goodwill, diminished profit margins and valuation, increased advertising costs, unjust enrichment based upon value of the property retained/loss, and other damages to be determined at trial.

176.   WHEREFORE, Plaintiffs demand judgment in their favor on all counts and request actual damages to be proven at trial, and multiplied damages, and permanent injunctive relief, including, but not limited to, the immediate return of all of Plaintiffs' trade secrets and Confidential Information, an Order directing Defendants to refrain from using such Confidential Information and to cease using such information (and information derived from such information), and granting attorneys' fees, and such other and further relief as this Court deems just.

**Fifth Claim For Relief**

**(<u>Tortious Interference With Prospective Economic Relationship</u>)**

**(<u>Against All Defendants</u>)**

177.   Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs 1 through 176 of this Complaint.

178.   Plaintiffs have, and continue to have, reasonable expectations of economic and business relationships with their largest customers based upon its established track record of providing top lead generation services.

179.   Disha and Varunkumar were keenly aware of Plaintiffs' economic and business relationship with their top customers based on their work with the Katz Companies.

180.   Defendants acted intentionally and maliciously by downloading Plaintiffs' customer information before their resignation, leveraging Disha and Varunkumar's insider knowledge concerning Plaintiffs top customers, their knowledge of Plaintiffs' Confidential Information and trade secrets, including

preferences and pricing information, and knowledge of Plaintiffs' business strategies opportunities, to tailor Prime Marketing's solicitation of Plaintiffs' largest customers.

181. As a direct and proximate cause of Defendants' tortious conduct, Plaintiffs have suffered ascertainable damages, including lost profits, lost goodwill, diminished profit margins and valuation, unjust enrichment based upon value of the property retained/loss, and other damages to be determined at trial.

182. Defendants acted willfully, maliciously, and with reckless disregard to the rights of Plaintiffs, entitling Plaintiffs to recovery of punitive damages in an amount to be determined at trial.

183. WHEREFORE, Plaintiffs demand judgment in their favor on all counts and request actual damages to be proven at trial, and multiplied damages, and permanent injunctive relief, including, but not limited to, the immediate return of all of Plaintiffs' trade secrets and Confidential Information, an Order directing Defendants to refrain from using such Confidential Information and to cease using such information (and information derived from such information), and granting attorneys' fees, and such other and further relief as this Court deems just.

**Sixth Claim For Relief**

**(<u>Tortious Interference With Contractual Relations</u>)**

**(<u>Against Prime Marketing</u>)**

184. Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs 1 through 183 of this Complaint.

185. Disha and Varunkumar both signed their respective Agreement(s) with Plaintiffs, which are valid and enforceable contracts subject to California law.

186. Prime Marketing knew or should have known that Disha and Varunkumar were, and continue to be, under valid and enforceable contractual obligations to maintain the secrecy of Plaintiffs' trade secrets and Confidential Information and were employed by the Katz Companies.

//

DENTONS US LLP
601 S. FIGUEROA STREET, SUITE 2500
LOS ANGELES, CA 90017-5704
(213) 623-9300

187.    Notwithstanding Prime Marketing knowledge of the existence of the Agreements, Prime Marketing acted without justification in hiring/retaining Disha and Varunkumar with the purpose of misappropriating Plaintiffs' trade secrets and Confidential Information to launch its competing business (including while they were still employed by Plaintiffs), and has caused actual disruption and breach of the Agreement by Disha and Varunkumar, which constitutes a tort of intentional interference with contractual relations.

188.    As a direct and proximate cause of Prime Marketing's tortious conduct, Plaintiffs have suffered ascertainable damages, including lost profits, lost goodwill, increased advertising costs, diminished profit margins and valuation, unjust enrichment based upon value of the property retained/loss, and other damages to be determined at trial.

189.    Prime Marketing acted willfully, maliciously, and with reckless disregard to the rights of Plaintiffs, entitling Plaintiffs to recovery of punitive damages in an amount to be determined at trial.

190.    WHEREFORE, Plaintiffs demand judgment in their favor on all counts and requests actual damages to be proven at trial, and multiplied damages, and permanent injunctive relief, including, but not limited to, the immediate return of all of Plaintiffs' trade secrets and Confidential Information, an Order directing Defendants to refrain from using such Confidential Information and to cease using such information (and information derived from such information), and granting attorneys' fees, and such other and further relief as this Court deems just.

### Seventh Claim For Relief

### (<u>Civil Conspiracy</u>)

### (<u>Against All Defendants</u>)

191.    Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs 1 through 190 of this Complaint.

//

DENTONS US LLP
601 S. FIGUEROA STREET, SUITE 2500
LOS ANGELES, CA 90017-5704
(213) 623-9300

DENTONS US LLP
601 S. FIGUEROA STREET, SUITE 2500
LOS ANGELES, CA 90017-5704
(213) 623-9300

192.   Joshua Carpenter, who would later become the registered agent of Prime Marketing, was a long-time friend of Plaintiffs' former General Manager, Leonard Aguilar.

193.   Shortly after Mr. Katz discovered the existence of Prime Marketing in or around April 2020, Mr. Aguilar admitted to him that he had previously introduced Mr. Carpenter to Disha.  Mr. Aguilar also claimed that he was unaware about the circumstances surrounding the resignation of Eric Conces a few months before that.

194.   Mr. Aguilar would later resigned from the Katz Companies a mere 1.5 months after Disha and Varunkumar resigned, which was planned in advance.,

195.   After Mr. Aguilar's departure, Plaintiffs discovered that he had been secretly referring moving customers to Prime Marketing and Mr. Carpenter while he was still working as the General Manager.

196.   Disha, Varunkumar, Prime Marketing, Joshua Carpenter, Leonard Aguilar, Eric Conces, and members of AIS (Does 1-10) each combined or agreed to establish Prime Marketing to unfairly compete with Plaintiffs while Disha and Varunkumar were still employed by Plaintiffs, and each of their resignations were timed accordingly.

197.   Defendants took multiple overt acts in furtherance of this conspiracy. Namely, Defendants orchestrated a scheme whereby Disha and Varunkumar would breach their duties of loyalty to Plaintiffs, secretly misappropriate Plaintiffs' Confidential Information and trade secrets during their employment, misrepresent the true purpose and scope of work related to AIS, charge Plaintiffs for AIS's services and divert such funds to developing Prime Marketing, influence the resignations of Mr. Aguilar and Mr. Conces in breach of their contractual non-solicitation duties, deliberately slow-down the developmental work that benefits Plaintiffs in favor of developing and launching Prime Marketing using Plaintiffs' Confidential Information and trade secrets and at the direct expense of the Katz Companies that continued to pay their salaries, attempt to cover-up damaging evidence by

DENTONS US LLP
601 S. FIGUEROA STREET, SUITE 2500
LOS ANGELES, CA 90017-5704
(213) 623-9300

irretrievably deleting data from Plaintiffs' electronic devices before they could be discovered, and then misrepresenting the scope of their involvement when confronted.

198.    The object of the conspiracy was to constrain Plaintiffs' business operations, unfairly compete against Plaintiffs, and to divert Plaintiffs' customers through unlawful means at the direct expense of the Katz Companies.

199.    As a direct and proximate cause of Defendants' conspiracy, Plaintiffs have and continue to suffer ascertainable damages, including lost profits, lost goodwill, diminished profit margins and valuation, increased advertising costs, unjust enrichment based upon value of the property retained/loss, and other damages to be determined at trial.

200.    Defendants acted willfully, maliciously, and with reckless disregard to the rights of Plaintiffs, entitling Plaintiffs to recovery of punitive damages in an amount to be determined at trial.

201.    WHEREFORE, Plaintiffs demand judgment in their favor on all counts and request actual damages to be proven at trial, and multiplied damages, and permanent injunctive relief, including, but not limited to, the immediate return of all of Plaintiffs' trade secrets and Confidential Information, an Order directing Defendants to refrain from using such Confidential Information and to cease using such information (and information derived from such information), and granting attorneys' fees, and such other and further relief as this Court deems just.

## EIGHTH CLAIM FOR RELIEF

### (<u>Unfair Competition – Cal. Bus. & Prof. Code § 17200 *et seq.*</u>)

### (<u>Against Prime Marketing</u>)

202.    Plaintiffs re-allege and incorporate by reference each and every allegation contained in paragraphs 1 through 201 of this Complaint.

203.    Prime Marketing worked in concert with Disha and Varunkumar to leverage their specific knowledge of Plaintiffs' Confidential Information and trade

secrets, for the expressed purpose of competing unfairly against Plaintiffs and to acquire the business from Plaintiffs' highest-paying customers and others through unlawful means.

204. Prime Marketing did, in fact, improperly use this Confidential Information and trade secrets belonging to Plaintiffs as described above.

205. The knowing use of Plaintiffs' Confidential Information and trade secrets as described above to develop, launch, and operate Prime Marketing, while using Plaintiffs' resources and while also still being employed and receiving a paycheck from Plaintiffs, constitutes a violation of California Bus. & Prof. Code § 17200 *et seq.*

206. As a direct and proximate result of Prime Marketing's unfair business practices, Prime Marketing has been unjustly enriched in an amount to be determined at trial, for which Plaintiffs seeks restitution.

207. Prime Marketing's unfair competition and deceptive conduct have caused Plaintiffs irreparable harm, there is no adequate remedy at law, and the unfair competition of Prime Marketing will continue to cause harm to Plaintiffs unless and until Prime Marketing is restrained by this Court.

208. WHEREFORE, Plaintiffs demand judgment in their favor on all counts and request actual damages to be proven at trial, and multiplied damages, and permanent injunctive relief, including, but not limited to, the immediate return of all of Plaintiffs' trade secrets and Confidential Information, an Order directing Defendants to refrain from using such Confidential Information and to cease using such information (and information derived from such information), and granting attorneys' fees, and such other and further relief as this Court deems just.

//

//

//

//

DENTONS US LLP
601 S. FIGUEROA STREET, SUITE 2500
LOS ANGELES, CA 90017-5704
(213) 623-9300

## PRAYER FOR RELIEF SOUGHT

WHEREFORE, Plaintiffs respectfully request the following relief against Disha Virendrabhai Suthar, Varunkumar Suthar, and Prime Marketing, LLC, and all persons with knowledge or acting in concert with Defendants:

1.      Enter an Order permanently enjoining Disha Virendrabhai Suthar, Varunkumar Suthar, and Prime Marketing, LLC from using or disclosing Plaintiffs' Confidential Information and trade secrets and to return all of the same;

2.      Award Plaintiffs damages, including punitive damages, and pre- and post-judgment interest, in an amount to be determined at trial;

3.      Award Plaintiffs their costs and attorneys' fees; and

4.      Provide any further relief as this Court deems just, appropriate, and equitable.

Dated:  January 13, 2021                    DENTONS US LLP

By:_____
        Bety Javidzad

Attorneys for Plaintiffs
EQUATE MEDIA, INC., BUDGET VAN LINES, INC., QUOTE RUNNER, LLC, and HOME EXPERT, INC.

DENTONS US LLP
601 S. FIGUEROA STREET, SUITE 2500
LOS ANGELES, CA 90017-5704
(213) 623-9300

## **JURY DEMAND**

Plaintiffs hereby request and demand a jury trial of all issues so triable.

Dated:  January 13, 2021

DENTONS US LLP

By:_____

Bety Javidzad

Attorneys for Plaintiffs
EQUATE MEDIA, INC., BUDGET
VAN LINES, INC., QUOTE
RUNNER, LLC, and HOME EXPERT,
INC.